USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 06/30/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

*This Document Relates To:*
*Ward v. General Motors LLC, 14-CV-8317 (JMF)*
------------------------------------------------------------------------x

14-MD-2543 (JMF)

OPINION AND ORDER

JESSE M. FURMAN, United States District Judge:

**[Regarding Categorical Deposition Designation Disputes and the Redaction or Admissibility of the Valukas Report and the Statement of Facts]**

The next bellwether trial in this multidistrict litigation ("MDL"), brought by Plaintiff Dennis Ward and familiarity with which is presumed, is scheduled to begin on July 10, 2017. As in prior bellwether trials, the parties are vigorously litigating the admissibility of evidence concerning the long and complex history leading to New GM's 2014 recalls of certain vehicles equipped with defective ignitions switches and other accidents attributable to defective ignition switches. This case, however, contains a wrinkle that the earlier cases did not: Ward's vehicle did not contain the ignition switch at the center of that long and complex history (known as the "'423 switch" after its part number: 10392423), which New GM has conceded was defective. Instead, it contained a different switch (known as the "'190 switch" after its part number: 15886190), which was installed in model year 2008 and later vehicles. The '190 switch included a longer and stronger detent spring and plunger assembly, which allegedly resulted in the switch having a higher torque resistance than the '423 switch. In New GM's view, that cured the problems with the '423 switch. In any event, whereas the company (wisely) concedes that the '423 switch was defective, it does not concede the same as to the '190 switch.

In light of this wrinkle, New GM has aggressively argued for exclusion of most, if not all, evidence concerning the history leading up to the 2014 recalls and accidents involving the '423 switch. At times, Ward has taken an equally aggressive position at the opposite end of the spectrum, more or less seeking to introduce all of the evidence that was introduced in the earlier trials on the ground that the '190 switch, while perhaps better, suffered from the same basic defects as the '423 switch. In multiple rulings, the Court has adopted a middle-ground position between these two extremes. (*See, e.g.*, Docket Nos. 3947, 3972, 4065, 4104). On the one hand, the Court has explained, the history of the '423 switch is plainly relevant. It is inextricably intertwined with, and provides context for, the creation of the '190 switch. And it tends to show that New GM was long on notice of — and ignored or downplayed — the precise problems that Ward alleges were in his switch and allowed for inadvertent rotation. On the other hand, the Court has stressed that "the focus of the upcoming trial should remain fixed on whether the 190 switch in Plaintiff's car was defective (and caused Plaintiff's accident)" and, thus, "that evidence concerning the 423 switch should be limited on Rule 403 grounds." (Docket No. 4104).

The Court hoped (perhaps overly optimistically) that, with this guidance, the parties could narrow, if not eliminate, their disagreements about the evidence to be admitted at the upcoming trial — and that the Court would not be put in the position of having to resolve dozens of disputes over individual excerpts of documents, let alone set (potentially crude) limits on how much evidence Ward could offer concerning these matters. But the parties' briefing on two issues — their categorical disputes concerning deposition designations and their disputes over the admissibility or redaction of the Valukas Report and the Statement of Facts ("SOF") (familiarity with both of which is assumed) — makes clear that their visions of what this trial should look like remain far apart. (*See* Docket Nos. 4098, 4099, 4130, 4137, 4139). This

Memorandum Opinion and Order addresses the disputes presently before the Court and will hopefully provide the parties with enough guidance to apply the Court's views to other disputed matters, including their more specific disputes over deposition designations.

To that end, the Court begins by articulating some core conclusions that will guide its rulings below and going forward (to the extent that the parties cannot themselves agree on how to apply the conclusions to specific depositions or items of evidence):

- As the Court has explained before, Ward should be permitted to present evidence concerning the history of, and accidents relating to, the '423 switch to prove that New GM (and Old GM before it) was on notice of the defect or defects alleged here. (Docket No. 4065, at 17-18). More specifically, the Court agrees with Ward that such evidence is relevant to prove, among other things, that GM knew that mounting the ignition low on a steering column was potentially dangerous due to the possibility of "knee-key" interactions; knew that the use of a slotted key and heavy keychain increased the risk of inadvertent switch rotation; knew (or should have known) that having a "single point of failure" was problematic; and failed to view the risk of moving stalls as a safety problem. (Docket No. 4130, at 2-3; Docket No. 4139, at 4-5).

- As important as evidence concerning the '423 switch may be to the jury's understanding of the full story, Ward should not be permitted to make this trial about the '423 switch. To that end, and because evidence concerning the '423 switch is not admissible to prove the existence of a defect or causation (*see* 4065, at 15-17), evidence concerning the '423 switch and accidents involving the '423 switch should be significantly more limited than it was in the first two bellwether trials. So too, the Court will not permit Ward to introduce "excessive evidence of airbag non-deployment" given his concession that his crash did not exceed the deployment threshold. (Docket No. 4065, at 18-19).

- While evidence of the fact that the '423 switch caused deadly accidents has some probative value (with respect to notice and GM's culpability), that value is more limited than it was in the first two bellwether trials given that Ward's car contained a different switch. At the same time, the risk of unfair prejudice arising from such evidence is substantially greater here, as there is a danger that the jury could seek to punish New GM for bad conduct unrelated to Ward and the '190 switch. To that end, while the Court will permit (within reason) generic references to the fact that some of the OSIs resulted in deaths and serious injuries, it will not permit Ward to introduce details relating to the accidents or victims.

3

- Ward should not be limited to introducing evidence concerning the '423 switch through any one means. That is, the Court will permit him to introduce portions of the Valukas Report, the SOF, and deposition testimony, even if there is some duplication among this evidence, mindful that there may be subtle, but important, differences between different evidence (*see, e.g.*, Docket No. 4130, at 3-4 (discussing an arguable discrepancy between the SOF and the Valukas Report)) and that documentary evidence and testimonial evidence may not be equally effective for all jurors.

- To avoid wasting time, however, cumulative evidence should be kept to a minimum.

- It is important to ensure that the jury understands the distinction between the '423 switch and the '190 switch. To that end, the Court is prepared to give (1) a preliminary instruction about the two switches to the jury after it has been empaneled; (2) to give an appropriate instruction when the Valukas Report and SOF are admitted; and (3) to give curative instructions as appropriate during trial (including, for example, if deposition testimony is admitted and it is unclear from the testimony to which switch it refers).[1]

- The interests in not wasting time, limiting cumulative evidence, and avoiding confusion of the two switches counsel in favor of keeping the amount of deposition testimony concerning the '423 switch to a minimum. At the same time, New GM should not be permitted to exclude otherwise admissible evidence concerning the '423 switch by, on the one hand, forcing Ward to use videotaped deposition testimony in lieu of live testimony — thereby preventing the Court or Ward from clarifying when a witness is testifying about the '423 switch as opposed to the '190 switch — and, on the other hand, pointing to the fact that a witness does not specify the switch to which he or she is referring.

## "CATEGORICAL" DEPOSITION DESIGNATION DISPUTES

With those core conclusions in mind, the Court turns to the parties' "categorical" deposition designation disputes, disputes that also have some bearing on the parties' disputes with respect to the Valukas Report and the SOF.

---

[1] The Court will, by separate Order to be entered in due course, provide the parties with an opportunity to be heard on the language of the proposed instructions.

4

**Laura Andres:** New GM's objection to Andres's testimony as a categorical matter (Docket No. 4137, at 2-3), is, once again, OVERRULED. (*See also* Docket No. 2448, at 5). Notably, New GM made much the same objection to her testimony in the first two trials — that it related to an incident involving a different switch. As the Court explained, however, the defect in one ignition switch platform arguably put Old GM on notice that it should check for the problem in other platforms; indeed, Andres herself testifies that she was concerned about the problem afflicting other vehicles. (*See* Docket No. 4137 Ex. 2 ("Andres Tr."), at 82:23-24). New GM also argues that her incident involved "inadvertent inertial rotation — which is a rotation theory no longer at issue here." (Docket No. 4137, at 1). But whether or not that is true, Andres's testimony is relevant because it shows that, as early as 2005, GM knew that some of its ignition switches had insufficient torque resistance (and thus should have checked others) and about the possibility that knee-key interactions and heavy keychains could cause inadvertent switch rotation. (*See* Andres Tr. 37:1-21, 38:13-15).

**Depositions Regarding Switches Other Than the 190 Switch:** In light of the conclusions summarized above, and the rulings on the Valukas Report and SOF below, the Court agrees with New GM that Ward's deposition designations should be curtailed considerably. That said, New GM goes too far in proposing that the Court exclude twenty depositions in their entirety and exclude all '423 switch designations in other depositions. (Among other things, to the extent that New GM invokes the lack of "opportunity for clarification or rephrasing the question" (Docket No. 4137, at 4), Ward should not be prejudiced by the combination of New GM's strategic decision not to call its witnesses live and the fact that the depositions in the MDL understandably focused on the '423 switch.) The Court will permit Ward to exercise his own judgment in the first instance about what to cut in light of the Court's conclusions and rulings in

this Opinion and Order, but is inclined to say that deposition testimony concerning the '423 switch should not exceed approximately four hours. Moreover, as noted above, the Court is prepared to give the jury a curative instruction contemporaneously with respect to any testimony that is unclear or ambiguous at to which it refers. The parties should confer on which depositions warrant such curative instructions and advise the Court in advance.

**Mary Barra's Congressional Testimony:** The Court previously rejected New GM's contentions that Mary Barra's congressional testimony should be excluded as hearsay or on the ground that it was "given with the protections afforded by due process in judicial proceedings" and amidst "the pomp-and-circumstance of a congressional setting" (*See* Docket No. 1837, at 12-13; Docket No. 4137, at 6), and New GM provides no basis to revisit that decision. Nor is the fact that Barra testified as New GM "was still investigating the issue and/or by saying that she did not know the answer at the time" a basis for exclusion. (Docket No. 4137, at 6). Either way, her statements are statements of a party admissible under Rule 801(d) of the Federal Rules of Evidence; New GM's arguments go to weight, not admissibility. All of that said, the Court shares New GM's concern about the questions posed to Barra — especially Representative Waxman's question quoted at length in New GM's letter brief. (*Id.* at 6-7). The "question" recites multiple levels of hearsay that go to the heart of matters central to this trial — namely, whether the switch used in model year 2008 to 2010 cars (namely, the '190 switch) was itself defective or below specification. Given that, even if the Court were to instruct the jury that the questions could not be considered for the truth of the matter, the danger of unfair prejudice is significant. The Court is at a loss for how the questions could be redacted in a way that would leave Barra's answers understandable. But the Court will give Ward an opportunity to come up with a way to admit Barra's testimony that would address the real danger of unfair prejudice

6

from including the questions as is. Assuming he does so, counsel should confer and raise any disagreements with the Court.

**New GM's Counter- or Fairness-Designations:** Finally, without acknowledging the Court's prior rulings on the issue, Ward argues that the Court should permit him to play his designations as part of his case-in-chief and "force[]" New GM to play its counter-designations as part of its case-in-chief after he rests. (Docket No. 4139, at 7; *see* Docket No. 4137, at 7 (quoting the Court's prior rulings on the subject)). The Court declines the invitation to revisit its well-established procedures with respect to the sequence and timing of playing the parties' designations, which promote efficiency and minimize juror confusion. That said, the Court is open to what may be the impetus for Ward's suggestion — namely, that New GM's counter-designations are unduly "voluminous." (Docket No. 4139, at 6). Ward attaches only one example of what he views as unduly voluminous counter-designations: a portion of the beginning of Gary Altman's deposition, which lasts over twelve minutes, in which Altman describes his background in unnecessary (and, some might say, excruciating) detail — including his first jobs as a teenager, his father's and grandfathers' history of working in the automotive industry, and his internship in the 1970s. (*Id.* at 6-7 (citing *id.* Ex. 4). If that example is any indication, New GM's counter-designations are indeed unduly voluminous. The remedy for that, however, is not to adopt a different procedure for playing the parties' designations; it is to prohibit New GM from playing anything that would run afoul of Rules 106 and 403 of the Federal Rules of Evidence or Rule 32(a)(6) of the Federal Rules of Civil Procedure. New GM is strongly urged to pare down its counter-designations with that in mind (and in response to Ward's own pared down designations given this Opinion and Order); whether it does so or not, the Court will address any objections to specific counter-designations in the normal course.

# THE STATEMENT OF FACTS AND THE VALUKAS REPORT

In light of the foregoing, the Court makes the following rulings with respect to the parties' disputes concerning the SOF and Valukas Report.[2]

## The Statement of Facts

| Paragraph | Ruling on New GM's Objection |
|---|---|
| Header | OVERRULED |
| 1 | OVERRULED, except that ", which in 2012 was the largest automotive manufacturer in the world" shall be redacted. |
| 2 | SUSTAINED |
| 3 | OVERRULED |
| 4 | SUSTAINED |
| 6 | OVERRULED |
| 7 | OVERRULED |
| 8 | SUSTAINED |
| 9 | SUSTAINED |
| 10 | SUSTAINED |
| 11 | SUSTAINED |
| 22 | OVERRULED |
| 25 | OVERRULED |
| 26 | OVERRULED |
| 28 | OVERRULED |
| 30 | OVERRULED |
| 32 | OVERRULED |
| 33 | SUSTAINED |
| 35 | OVERRULED |
| 37 | OVERRULED |
| 38 | OVERRULED |
| 39 | OVERRULED |

---

[2] In what follows, the Court has exercised its best judgment about where to draw the appropriate lines between excerpts of the SOF and Valukas Report that should be admitted and excerpts that should be excluded. No doubt, reasonable people could disagree about whether the line should have been drawn differently with respect to particular excerpts. Moreover, the Court has been forced to draw lines without the benefit of knowing precisely what other evidence the parties plan to offer at trial. The Court is not eager to revisit the issues addressed in this Opinion and Order, and certainly will not entertain relitigation of them wholesale, but if a party is able to make a compelling case that exclusion of a particular excerpt would result in prejudice to its case, it may ask the Court to reconsider as to that excerpt (after conferring with the other side).

| Paragraph | Ruling on New GM's Objection |
|---|---|
| 40 | OVERRULED |
| 43 | OVERRULED |
| Header | SUSTAINED |
| 45 | OVERRULED as to the first sentence; the rest of the paragraph ("In July 2004" on) shall be redacted |
| 46 | OVERRULED |
| 47 | OVERRULED |
| 48 | SUSTAINED |
| 49 | SUSTAINED |
| 50 | SUSTAINED |
| 51-59 | SUSTAINED |
| 61 | SUSTAINED |
| 62 | SUSTAINED |
| 69 | SUSTAINED |
| 70 | OVERRULED |
| 71 | OVERRULED |
| 76 | SUSTAINED |
| 77 | OVERRULED, except that "in which the Virginia Crash expert's report was discussed," shall be redacted. |
| Header | SUSTAINED |
| 80-81 | SUSTAINED |
| Header | SUSTAINED |
| 83 | SUSTAINED |
| 85 | OVERRULED |
| 86 | OVERRULED |
| 87 | OVERRULED |
| 88-91 | SUSTAINED |
| 92 | SUSTAINED |
| 94 | SUSTAINED |
| Header | SUSTAINED |
| 95-99 | SUSTAINED |
| Header | SUSTAINED |
| 100-07 | SUSTAINED |
| Header | SUSTAINED |
| 111-15 | SUSTAINED |

## The Valukas Report

| Page | Ruling (on New GM's Objection Unless Otherwise Noted) |
|---|---|
| 17-19 | OVERRULED |
| 57 n.219 | OVERRULED |
| 58 | OVERRULED |

| Page | Ruling (on New GM's Objection Unless Otherwise Noted) |
|---|---|
| 59-64 | OVERRULED; Ward's objection to New GM's counter-designation on Page 62 is SUSTAINED |
| 64-65 | Ward's objection to New GM's counter-designation is OVERRULED; in light of that, the prior paragraph (the one full paragraph on Page 64) shall also be included |
| 64-68 | OVERRULED. (The Court understands that there is no objection to New GM's counter-designation on Page 66. To the extent there is, the objection is OVERRULED.) |
| 75-76 | OVERRULED |
| 81-94 | OVERRULED |
| 103-05 | SUSTAINED |
| 108-11 | SUSTAINED |
| 112-18 | SUSTAINED |
| 121-25 | SUSTAINED |
| 129-30 | SUSTAINED |
| 132-33 | OVERRULED |
| 139-41 | OVERRULED, except as to the designation concerning the Chansuthus accident (Pages 140-41), which is SUSTAINED. |
| 145-53 | SUSTAINED |
| 162-69 | SUSTAINED with respect to the designation concerning the Melton accident (Pages 162-65); OVERRULED with respect to the designation concerning the visit to the Davison Junkyard (Pages 165-67); SUSTAINED with respect to the designation concerning the Lambert accident (Pages 167-69). |
| 169-71 | SUSTAINED |
| 171-72 | SUSTAINED |
| 176-78 | OVERRULED, except that footnote 812 shall be redacted to remove any references to the *Melton* case. |
| 180-84 | SUSTAINED |
| 191-93 | OVERRULED |
| 194-95 | OVERRRULED; Ward's objection to New GM's counter-designation on Page 195 is SUSTAINED |
| 203-04 | SUSTAINED |
| 206-07 | SUSTAINED |
| 282-91 | OVERRULED |
| 306-09 | SUSTAINED |
| 310-13 | OVERRULED |

**CONCLUSION**

Pursuant to Paragraph 2.J of Order No. 120 (Docket No. 3651), the parties are to submit "[a]ny remaining deposition designation disputes" no later than three days from today. (Docket

No. 3651). In light of the upcoming holiday weekend, and the Court's hope that the parties make a serious effort to modify their designations in light of this Opinion and Order, the parties are granted until **Sunday, July 9, 2017**, to submit their remaining deposition designation disputes, except that designation disputes for any deposition that Ward anticipates playing on the first two days of trial shall be submitted to the Court no later than **July 6, 2017, at 5 p.m.**

More broadly, the Court hopes that this Opinion and Order assists the parties going forward in narrowing, if not eliminating, their evidentiary disputes. The bottom line is that Ward will be permitted to present his theory of the case to the jury and to argue that the '190 switch was unreasonably dangerous in the same ways that the '423 switch was. To that end, he will be permitted to present evidence concerning the long and tortured history of the '423 switch (not to mention expert testimony concerning the relationship between the two switches). At the same time, the Court will take steps to ensure that such evidence is limited, to minimize confusion and waste of time, and to ensure that the focus of the trial remains on the questions at the heart of this case — whether the '190 switch in Ward's car was defective and, if so, whether that caused his accident and resulting injuries.

SO ORDERED.

Dated: June 30, 2017
New York, New York

JESSE M. FURMAN
United States District Judge