USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 07/05/2017

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION  14-MD-2543 (JMF)

*This Document Relates To:*  OPINION AND ORDER
*Ward v. General Motors LLC, 14-CV-8317 (JMF)*
------------------------------------------------------------------------x

JESSE M. FURMAN, United States District Judge:

**[Regarding New GM's Thirty-Fifth and Thirty-Sixth Motions *in Limine*]**

The next bellwether trial in this multidistrict litigation ("MDL"), familiarity with which is presumed, involves claims brought under Arizona law by Plaintiff Dennis Ward against General Motors LLC ("New GM") stemming from a March 27, 2014 accident in Tucson, Arizona, involving Ward's 2009 Chevrolet HHR. By Opinion and Order entered on June 9, 2017, the Court resolved five disputed motions *in limine*. (Docket No. 4065).[1] In this Memorandum Opinion and Order, the Court addresses two additional motions *in limine* that became fully briefed after the Court's earlier Opinion was filed: New GM's Thirty-Fifth Motion, which seeks to exclude certain evidence and argument concerning the recall of 2009 Chevrolet HHRs, which was announced the day after Ward's accident (Docket No. 4068); and New GM's Thirty-Sixth Motion, which seeks to preclude evidence concerning data received from the City of Tucson about the condition of the road upon which Ward was driving at the time of his accident. (Docket No. 4127). For the reasons stated below, New GM's motions are both GRANTED.

---

[1] Unless otherwise noted, all docket references are to the MDL docket, 14-MD-2543.

### A. New GM's Thirty-Fifth Motion *in Limine*

New GM's Thirty-Fifth Motion *in Limine* seeks to exclude "evidence or argument about the availability of recall repair parts, the availability of loaner vehicles, and the sufficiency or adequacy of the recall notice and repair." (Docket No. 4069 ("New GM's MIL 35 Mem."), at 2). Upon review of the parties' motion papers, the motion is GRANTED, substantially for the reasons set forth in both the Court's Opinion and Order addressing a similar motion *in limine* in connection with the first bellwether trial, *see In re General Motors LLC Ignition Switch Litig.*, 14-MD-2543 (JMF), 2015 WL 8270427, at *2-3 (S.D.N.Y. Dec. 7, 2015), and New GM's memoranda of law here. (*See* New GM's MIL 35 Mem. 4-6; Docket No. 4135 ("New GM's MIL 35 Reply"), at 1-4). Put simply, nothing relating to the recall — except for its timeliness (or lack thereof), to which New GM's motion expressly does not apply (*see* New GM's MIL 35 Reply 1-2; Docket No. 4106 ("Ward's MIL 35 Opp'n"), at 2 n.4, 5 n.10) — is relevant to liability, as Ward's accident took place *before* the recall was announced. And while the adequacy of the recall could conceivably be relevant to the question of punitive damages, "any probative value with respect to punitive damages is slight and is substantially outweighed by the dangers of unfair prejudice, confusing the issues, misleading the jury, undue delay, and wasting time." *In re General Motors*, 2015 WL 8270427, at *2 (citing Fed. R. Evid. 403); *see also Phillip Morris USA v. Williams*, 549 U.S. 346, 355 (2007) (noting that, while juries may consider harm to people other than the plaintiff in evaluating the "reprehensibility" of a defendant's conduct for purposes of punitive damages, "the Due Process Clause requires States to provide assurance that juries are not asking the wrong question, *i.e.*, seeking, not simply to determine reprehensibility, but also to punish for harm caused strangers"). Accordingly, New GM's Thirty-

Fifth Motion *in Limine* is GRANTED.[2]

**B. New GM's Thirty-Sixth Motion *in Limine***

New GM's Thirty-Sixth Motion seeks to preclude, pursuant to Rule 37(c) of the Federal Rules of Civil Procedure, "evidence, testimony, and argument relating to the pavement condition data plaintiff collected from the City of Tucson." (Docket No. 4127). The essential facts are not really in dispute. In late March of this year — over four months after fact discovery had closed (*see* Docket No. 3559, ¶ 6), and just before the depositions of New GM's experts — Ward requested and received from Tucson officials data relating to the pavement conditions for streets in Tucson, which showed that the condition of the roadway upon which Ward was driving at the time of his accident was rated "poor." (Docket No. 4129 ("New GM's MIL 36 Mem."), at 2-3). Ward's counsel used that information to formulate questions in depositions of New GM's expert witnesses days later, but did not disclose it to New GM at the time. (*See id.* at 3-5). Almost two months later, in late May, Ward requested and received from Tucson officials a related, broader set of materials as well as the names of potential witnesses who could testify about the data. (*See id.* at 5-6). By letter dated May 22, 2017, Ward disclosed his preliminary witness list to New GM, which included two witnesses pertaining to the pavement condition data: Michael Graham and Daryl Cole. (*See id.* at 6; Docket No. 4131-1, at 1). Prompted by that information — the first disclosure of any kind regarding the pavement condition data and Ward's communications

---

[2] That said, the Court agrees with Ward that if New GM questions him at trial (or makes any argument) about how long he waited to have his car repaired, it would open the door to evidence that he contacted a GM car dealership and was told that replacement parts would not be available until October 2104 and that he was not told about the availability of loaner vehicles. (Ward's MIL 35 Opp'n 8-9). But the door would open only to evidence concerning Ward's *own* experiences and understandings, not to evidence "about the adequacy of the post-accident recall, recall notice, and/or recall repair generally." (New GM's MIL 35 Reply 2).

with the Tucson officials about that data — New GM contacted an attorney for Tucson and learned about Ward's investigative efforts. (*See* New GM's MIL 36 Mem. 6). On June 7, 2017, as part of the parties' exchange of "branded" trial exhibits, Ward finally disclosed to New GM material he had received from the Tucson officials — although, even then, apparently only a subset of the overall material. (*See id.* at 6-7).

Given these facts, Ward wisely concedes that he committed a discovery violation. (*See* Docket No. 4149 ("Ward's MIL 36 Opp'n"), at 1, 8). At a minimum, the data that he sought and obtained in March was plainly within the scope of New GM's earlier discovery requests (*see* New GM's MIL 36 Mem. 1-2), and was subject to prompt disclosure under Rule 26. *See* Fed. R. Civ. P. 26(a)(1)(A)(ii) (requiring disclosure of documents and data "that the disclosing party has in its possession, custody, or control and may use to support its claims"); Fed. R. Civ. P. 26(e)(1)(A) (requiring that a party supplement its disclosures in a timely manner should it discover that they were incorrect or incomplete). In the case of such a violation, Rule 37 provides that the offending party "is not allowed to use" the material or witness at issue at trial, "unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). Despite the seemingly mandatory language of the Rule, however, preclusion is not mandatory. *See, e.g.*, *Design Strategy, Inc. v. Davis*, 469 F.3d 284, 297-98 (2d Cir. 2006). Instead, a district court has "wide discretion" in deciding whether to impose sanctions and, if it does, what sanctions to impose. *Id.* at 294-98. In determining whether preclusion is warranted, a court must consider four factors: "(1) the party's explanation for the failure to comply with the disclosure requirement; (2) the importance of the [new evidence]; (3) the prejudice suffered by the opposing party as a result of having to prepare to meet the new [evidence]; and (4) the possibility of a continuance." *Patterson v. Balsamico*, 440 F.3d 104, 117 (2d Cir. 2006); *accord Design*

*Strategy*, 469 F.3d at 296.

Applying and weighing the *Patterson* factors here, the Court concludes that preclusion of all evidence and testimony relating to the pavement condition data Ward collected from Tucson is indeed the appropriate sanction. The first factor — the offending party's explanation for the failure to comply with the disclosure requirement — "cuts heavily against [Ward], as he does not even attempt to proffer a legitimate explanation for his eleventh hour disclosure of" the material he received beginning in March. *Simon v. City of N.Y.*, No. 14-CV-8391 (JMF), 2017 WL 57860, at *6 (S.D.N.Y. Jan. 5, 2017). Ward tries to obscure his lack of justification by focusing on his comparatively swifter disclosure of the information he obtained in late May (*see* Ward's MIL 36 Opp'n 7-8), but that information was merely an extrapolation of the information he had obtained in March. Additionally, Rule 26 expressly provides that "[a] party is not excused from making its disclosures because it has not fully investigated the case." Fed. R. Civ. P. 26(a)(1)(E). And given that trial was imminent, Ward's disclosure of the materials and information he received near the end of May was itself arguably untimely. *See* Fed. R. Civ. P. 26(e)(1)(A) (providing that a party must supplement its disclosures "in a timely manner"). He received the data or documents as early as May 22, 2017, but he did not begin disclosing them until June 7, 2017 (and even then, appears to have disclosed only a subset of the data and documents), when the parties were required to exchange "branded exhibits." (*See* New GM's MIL 36 Mem. 5-7).³ Granted, the delay in the disclosure of those materials was little more than

---

³ To be sure, Ward did list Graham and Cole on his preliminary witness list dated May 22, 2017 (*see* Docket No. 4131-1, at 1), but he provided no information other than their names. *Cf.* Fed. R. Civ. P. 26(a)(1)(A)(i) (requiring a party to disclose during discovery "the name and, if known, the address and telephone number of each individual likely to have discoverable information — along with the subjects of that information — that the disclosing party may use to support its claims"). And while he did include references to some of the materials in the exhibit

two weeks, but every day counts in the final lead up to a trial, and Ward provides no explanation whatsoever for his failure to *immediately* disclose the information when he received it.

Compounding matters, Ward provides no explanation for why he waited until months after fact discovery had closed in December 2016 to seek the evidence at issue. Ward knew (and certainly should have known) well before that deadline that the condition of the roadway was a potentially significant issue — given that he himself was involved in the accident and given evidence that some defective GM ignition switches had been prone to inadvertent rotation in rough road conditions. Yet, inexplicably, he waited until well after fact discovery closed, and the bulk of expert discovery was completed no less, to pursue it. Had Ward done so by way of subpoena, there is no question that New GM would have been on firm ground moving to quash — as an earlier decision by the Court in this very MDL (on a motion by Lead Counsel, no less) makes clear. *See In re General Motors LLC*, No. 14-MC-2543 (JMF), 2016 WL 2766654, at *2 (S.D.N.Y. May 12, 2016) (quashing a subpoena served by New GM after the close of discovery because it "did absolutely nothing to pursue the matter" for almost a year after it was on notice about the information sought). The fact that he obtained the material without having to serve a subpoena does not materially change the situation. "Put simply, deadlines matter — and they matter especially strongly in litigation of this size and complexity." *Id.*; *see also, e.g.*, *In re World Trade Ctr. Disaster Site Litig.*, 722 F.3d 483, 487 (2d Cir. 2013) (noting that district courts' "responsibility to manage their dockets so as to achieve the orderly and expeditious

---

list that he provided to New GM on May 26, 2017, that list contained in excess of 3600 exhibits and, as New GM notes, the documents at issue were not identified in a way that would make clear they were previously undisclosed pavement condition data. (Docket No. 4163 ("New GM's MIL 36 Reply") 3 n.1).

6

disposition of cases . . . is particularly acute where the litigation is complex and continuing" (citation omitted) (internal quotation marks omitted)). To allow Ward to use evidence that he did not even begin to seek until four months after fact discovery closed — and did not disclose for more than two months thereafter — "would suggest to the parties in this litigation that the Court's deadlines are merely hortatory or aspirational and not real deadlines. . . . [T]he Court is not willing to risk that possibility." *In re General Motors LLC*, 2016 WL 2766654, at *2.

The second *Patterson* factor — the importance of the evidence at issue — is a closer call. On the one hand, for the reason noted above — namely, that there is evidence that some defective GM ignition switches had been prone to inadvertent rotation in rough road conditions — the condition of the roadway at the time of Ward's accident is arguably significant. On the other hand, to quote from Lead Counsel's earlier motion to quash New GM's tardy subpoena, "if the records were so important," surely Ward "would have made sure that [he] had them during the discovery period." (Docket No. 2819, at 3). Additionally, Ward can indisputably introduce other evidence — including his own testimony and the testimony of other percipient witnesses — concerning the condition of the roadway on the date of his accident. Indeed, Ward himself concedes throughout his memorandum of law that the evidence at issue is cumulative — if not unnecessary. (*See* Ward's MIL 36 Opp'n 1 (stating that the documents obtained in March merely "confirmed what several fact witnesses and New GM's own experts already knew — the roadway was in poor condition at the time of the accident"); *id.* at 8 (conceding that the documents "did not contain any information that was not known to the parties" as "fact witnesses testified that the road had been repaved since the accident" and "the investigation of New GM's experts independently revealed that the road conditions were poor at or near the time of the accident"); *id.* at 9 (noting that "fact witnesses remember Kolb Road was rough or bumpy on the

7

date of the Ward accident" and that "New GM's own experts concluded, without the [Tucson] documents, that the road was in poor condition at or around the time of the accident")). As a matter of fact, it is not even clear that the issue is in real dispute, as one of New GM's own experts agreed that the condition of the roadway at the time of Ward's accident was "fair to poor." (New GM MIL 36 Mem. 4).[4] Thus, the second factor is a draw and may even cut against Ward; at best, it leans only slightly in his favor.

The third *Patterson* factor — the prejudice suffered by New GM as a result of having to prepare to meet the new evidence — also supports preclusion. Among other things, Ward's belated disclosure deprived New GM of the opportunities to conduct an investigation into how the data was collected; to depose the person or persons responsible for the data to determine the bases for their arguably subjective judgments; to cross-examine percipient witnesses (including Ward) and Ward's experts using the material; to incorporate the material into New GM's own experts' analyses and trial preparation; and to consider retaining an additional expert on pavement condition analyses. Making matters worse, Ward used the material that he had secretly obtained in his cross-examination of New GM's experts (*see* New GM's MIL 36 Mem. 3-5), locking them in to testimony that, if he were allowed to use the Tucson data at trial, he

---

[4]    In arguing otherwise, Ward notes that New GM "has identified several photographs of the roadway, all of which show the road newly repaved." (Ward's MIL 36 Opp'n 8-9). But New GM concedes that there is no dispute "that the road was repaved after the accident." (New GM's MIL 36 Reply 4). And in any event, depending on the foundation laid for the photographs (namely, whether the authenticating witness makes clear that they do not depict the condition of the roadway on the date of the accident), they may well be excluded under Rules 402 and 403 of the Federal Rules of Evidence. In the unlikely event that New GM introduces the photographs without making clear that they depict the roadway on a later date, or argues that the road conditions were not poor at the time of the accident, that might open the door to some of the evidence at issue here. But the Court need not decide that at the moment.

could seek to impeach on the ground that they failed to consider (or did not contest) that data. Ward counters that, under the Court's scheduling orders, New GM was entitled to depose Graham and Cole as late as June 22, 2017. (Ward's MIL 36 Opp'n 5). That is true (*see* Docket No. 3651, ¶ 3(g)), but it does not suffice. For one thing, Cole and Graham were apparently not the people who collected the relevant data. (New GM's MIL 36 Reply 3-4 & n.5). For another, it does not address the other ways in which New GM would be prejudiced by allowing the belatedly disclosed evidence to be used at trial.

The fourth and final *Patterson* factor requires little discussion, as Ward himself concedes that a continuance is inappropriate at this late date. (*See* Ward's MIL 36 Opp'n 10). But if that was true on June 27, 2017, when Ward filed his memorandum of law in opposition to New GM's motion, it is all the more true now: Trial is only five days away; both sides (and the Court) have invested enormous resources in preparing for trial and have arranged their schedules (and presumably witnesses' schedules) in light of the trial date; and prospective jurors have completed written questionnaires as part of the jury selection process. (*See* Docket No. 3651 ¶ 4). On top of that, this trial is no an ordinary trial; it is a "bellwether" trial in a large and complex MDL with many moving parts and participants. Putting aside the Court's commitments in connection with *other* cases, granting a continuance here would disrupt the carefully calibrated schedule in the MDL and have large secondary effects beyond this one member case.

In short, all of the *Patterson* factors, save perhaps the second, favor preclusion of the evidence and testimony relating to the pavement condition data that Ward obtained from Tucson and belatedly produced. Weighing the factors together, preclusion is plainly the appropriate remedy for Ward's conceded discovery violation. In fact, even if the second factor leaned heavily in Ward's direction — and it does not — preclusion would be appropriate. For one

9

thing, all three other factors favor exclusion. *See, e.g.*, *Design Strategy*, 469 F.3d at 296-97 (holding that preclusion was appropriate — even though the evidence at issue "was essential" to the plaintiff's ability to prove lost profits — because the first, third, and fourth *Patterson* factors "all . . . weigh[ed] heavily in favor of exclusion"); *Simon*, 2017 WL 57860, at *6 ("[T]he mere fact that the evidence may be important is not sufficient to avoid preclusion where no explanation has been given for the delay." (internal quotation marks omitted)). For another, the second and third factors are inversely correlated. Thus, the more critical the evidence at issue is to Ward's case, the more prejudice that New GM would suffer if the Court were to allow Ward to use it and, by extension, the more the third factor would favor preclusion. *See Simon*, 2017 WL 57860, at *6 ("Generally, the greater the importance of a witness, the more prejudice is suffered by the defendants by not having had the opportunity to depose that witness, seek documents from him or her, or question other witnesses about the witnesses' activities or knowledge." (internal quotation marks omitted)).

Notably, Ward does not seriously dispute that preclusion of evidence would be appropriate for his discovery violation. (*See* Ward's MIL 36 Opp'n 8). Instead, his primary argument concerns the scope of such preclusion: He contends that, "[a]t most, the Court should preclude" some or all of the documents that he obtained in March and that the Court should *not* preclude evidence or testimony concerning the information that he received in May. (*Id.*). As noted, however, the evidence obtained in May was an extrapolation of that obtained in March. Moreover, the earlier evidence is what prompted Ward to go back to the Tucson officials in search of the broader evidence in May. (*See, e.g.*, Docket No. 4131-11, at 1 (e-mail from Ward's counsel to Tucson officials, referencing a chart obtained in March, and asking if there was "a larger or more complete document from which this chart comes" and "[w]ho created the chart").

Thus, it would not suffice to suppress the March evidence, but allow Ward to use the May evidence. In fact, to hold otherwise would give parties who learn about critical information in the hands of a third party "the perverse incentive" to wait until the eve of trial to obtain that information and then "spring it . . . on their adversaries . . . — an extreme version of the 'sandbagging' that Rule 26 attempts to avoid." *Agence France Presse v. Morel*, 293 F.R.D. 682, 687 (S.D.N.Y. 2013); *cf. In re General Motors LLC*, 2016 WL 2766654, at *1 (rejecting New GM's argument that it should be allowed to issue an untimely subpoena because it had issued a similar subpoena during discovery on the ground that, "taken to its logical conclusion," the argument "would allow a party to perfect a subpoena *at any time* after discovery ends, so long as it served a similar subpoena before the close of discovery" and noting that "[n]either law nor logic supports that result" (internal quotation marks and brackets omitted)).

In sum, although preclusion is a harsh sanction, *see, e.g.*, *Design Strategy*, 469 F.3d at 297, and a court "must consider less drastic responses" before ordering preclusion, *Outley v. City of New York*, 837 F.2d 587, 591 (2d Cir. 1988), the Court concludes that it is warranted, if not necessary, here. *See, e.g.*, *Estate of Jaquez v. Flores*, No. 10-CV-2881 (KBF), 2016 WL 1060841, at *8 (S.D.N.Y. Mar. 17, 2016) (precluding evidence that was first disclosed after the close of discovery and shortly before trial because, among other things, the plaintiffs had been "clearly aware that [the relevant] issues would be hotly contested and central to the case, and merely sought to sandbag the defendants at this late hour," noting that the plaintiffs had "proceeded at their peril when they decided not to furnish the required information to defendants during discovery" and "now must live with that tactical choice"); *Quiles v. City of N.Y.*, No. 11-CV-5613 (FM), 2014 WL 1918635, at *5-6 (S.D.N.Y. May 8, 2014) (precluding documents disclosed for the first time shortly before trial where "the records in question relate[d] directly to

[a known] issue," witnesses were available to give testimony to "establish those [same] facts," and the opposing party "would be prejudiced by the . . . eleventh-hour disclosure"). Accordingly, New GM's Thirty-Sixth Motion *in Limine* is granted.

## CONCLUSION

For the reasons stated above, New GM's Thirty-Fifth and Thirty-Sixth Motions *in Limine* are GRANTED. The Clerk of Court is directed to terminate 14-MD-2543, Docket Nos. 4068 and 4127, and 14-CV-8317, Docket Nos. 309 and 336.

SO ORDERED.

Dated: July 5, 2017
      New York, New York

_____
JESSE M. FURMAN
United States District Judge