UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------------------------x

IN RE:

GENERAL MOTORS LLC IGNITION SWITCH LITIGATION

*This Document Relates To:*
*Ward  v. General Motors LLC, 14-CV-8317*

-----------------------------------------------------------------------------x

USDC SDNY
DOCUMENT
ELECTRONICALLY  FILED
DOC #:_____
DATE FILED:  07/06/2017

14-MD-2543 (JMF)

JOINT PRETRIAL ORDER

## JOINT PRETRIAL ORDER

Plaintiff Dennis R. Ward and defendant General Motors LLC ("New GM" or "GM LLC")

respectfully submit this Proposed Joint Pretrial Order pursuant to Order No. 120 (Docket No.

3651) and Rule 5.A of the Court's Individual Rules and Practices in Civil Cases.

## I.   FULL CAPTION OF THE ACTION

The full caption of the action is set forth above.

## II.   TRIAL COUNSEL INFORMATION

*Attorneys for Plaintiff Dennis Ward*:

Nicholas R. Wise
James Bilsborrow
Weitz & Luxenberg, P.C.
700 Broadway
New York, NY 10003
Phone: (212) 558-5500
Fax: (212) 344-5461
Email: nwise@weitzlux.com
jbilsborrow@weitzlux.com

Paul F. Novak
Diana Gjonaj
Weitz & Luxenberg, P.C.
Chrysler House
719 Griswold, Suite 620
Detroit, MI 48226
Phone: (313) 800-4170
Fax: (646) 293-7992
Email: pnovak@weitzlux.com

*Attorneys for Defendant General Motors LLC:*

Mike Brock
Kirkland & Ellis LLP
655 Fifteenth Street, N.W.
Washington, D.C. 20005
Phone: +1 202-879-5991
Fax: +1 202-879-5200
Email: mike.brock@kirkland.com

Brian Sieve, P.C.
Renee D. Smith
Kirkland & Ellis LLP
300 North LaSalle
Chicago, IL 60654
Phone: +1 312-862-2081
Fax: +1 312-862-2200
Email: richard.godfrey@kirkland.com
brian.sieve@kirkland.com
renee.smith@kirkland.com

dgjonaj@weitzlux.com

Robert C. Hilliard
Hilliard Munoz Gonzales
719 S. Shoreline Blvd., Suite 500
Corpus Christi, TX 78401
Phone: (361) 882-1612
Fax: (361) 882-3015
Email: bobh@hmglawfirm.com

## III.    SUBJECT MATTER JURISDICTION

This Court has subject-matter jurisdiction over this action under 28 U.S.C. § 1332(a)(1) because the amount in controversy exceeds $75,000 (excluding interests and costs), and the plaintiff and defendant are citizens of different states.  This Court also possesses supplemental jurisdiction over plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

## IV.    CLAIMS AND DEFENSES REMAINING TO BE TRIED/NOT TO BE TRIED

The current claims and defenses to be tried are listed below.

### A.    Plaintiff's Statement

On March 27, 2014, Plaintiff was driving his 2009 Chevrolet HHR northbound on South Kolb Road, in Tucson, Arizona. As he passed through the intersection with East Stella Road, Mr. Ward observed that the vehicle ahead of him was either slowing abruptly or it had stopped. Mr. Ward applied his brakes to avoid a collision, but the antilock brakes (ABS) on his HHR did not function. Mr. Ward observed that the lane to his right was open and he attempted to steer his vehicle into that lane to avoid the collision, but Mr. Ward's steering wheel was "heavy" and difficult to move. As a result of the loss of ABS and power steering capability, Mr. Ward was unable to avoid the accident and collided with the vehicle stopped ahead of him in the road. Mr. Ward contends that his vehicle lost ABS and power steering capability because the ignition switch in his vehicle inadvertently moved from the 'run' to the 'accessory' position just prior to or during the application of the brake pedal. The inadvertent rotation of the ignition switch disabled the ABS

2

and power steering in Mr. Ward's vehicle. Further, the inadvertent rotation of the ignition switch occurred because of defects with and related to the ignition switch that rendered the vehicle unreasonably dangerous. Plaintiff suffered a ruptured patellar tendon as a result of the accident, which required surgery to repair. This injury has resulted in a permanent loss of function in his right leg.

Plaintiff asserts two causes of action to be tried against New GM under Arizona law: (1) Negligence (Count I), and Strict Liability (Count II). Plaintiff also asserts that he is entitled to punitive damages because New GM consciously pursued a course of conduct knowing that it created a substantial risk of harm to others in connection with his Counts I and II.[1]

### 1.    Negligence

Plaintiff contends that New GM was negligent under four theories of negligence: failure to warn, design defect, general failure to exercise due care, and negligence *per se*.[2]

<u>Failure to Warn</u>. Plaintiff alleges that his ABS and power steering were disabled during the accident because his vehicle was equipped with a defective ignition switch that failed to meet Old GM's manufacturing specifications for torque performance and was mounted low on the steering column, such that a driver's keys and keychain could interact with the driver's knee. These conditions, either separately or in tandem, could cause the ignition switch to move from the 'run' to the 'accessory' position during ordinary driving conditions. Old and New GM knew that this

---

[1]   Plaintiff has withdrawn a claim for fraudulent concealment, which was pled in his Amended Complaint. Plaintiff also pled a claim for violation of the Arizona Consumer Fraud Act, but that claim was dismissed by the Court on summary judgment.  (*See* Docket No. 4110, at 16-18).

[2]   For the remainder of Plaintiff's Statement, the "ignition switch defect" refers to defects with and related to the ignition switch installed in Plaintiff's 2009 Chevrolet HHR that caused the ignition switch to move inadvertently from the 'run' to the 'accessory' position, thereby disabling the vehicle's power, power steering, power brakes, ABS, and airbag system.

risk increased if a driver, like Mr. Ward, was using a key with a slotted key head and his or her keychain was long and heavy.[3] Old and New GM also knew that if the ignition switch in Plaintiff's vehicle moved from the 'run' to the 'accessory' position while the vehicle was in use, the vehicle's power, power steering, power brakes, ABS, and airbags would be disabled.

Plaintiff alleges that both Old and New GM knew of the ignition switch defect and failed to adequately warn him about this defect before his crash. Old GM knew of or had reason to know about the defect prior to sale of the vehicle and was under a continuing duty to warn Plaintiff. New GM had an independent duty to warn Plaintiff of the defect, which New GM knew and understood from day one of its existence. New GM had a duty to disclose the ignition switch defect to Plaintiff based on the relationship between New GM and Old GM vehicle purchasers, including but not limited to the fact that New GM expressly agreed to monitor Old GM vehicles for defects and report defects in Old GM vehicles to the National Highway Traffic Safety Administration ("NHTSA") and vehicle owners and purchasers. New GM's knowledge regarding the ignition switch defect and its deadly consequences continued to expand, as it learned of the dangers posed by ignition switches susceptible to inadvertent rotation, either because the torque performance was inadequate or because a driver could cause the ignition switch to rotate by impacting the ignition key and/or keychain with his or her knee. Indeed, Old GM was acutely aware of these dangers, which led it to redesign the ignition switch in 2006. The redesigned switch—the '190 switch—continued to fall below Old GM's specifications for torque performance, but Old GM approved it anyway. Old GM also continued to design vehicles on its Delta platform, including Plaintiff's 2009

---

[3]   When referring to both Old GM and New GM herein, Plaintiff is referring to conduct and knowledge of Old GM before July 10, 2009 and to conduct and knowledge of New GM on or after July 10, 2009 (including knowledge inherited from Old GM).

Chevrolet HHR, that mounted the ignition switch low on the steering column, in close proximity to the driver's knee.

Despite its knowledge of the ignition switch defect, Old GM never warned Plaintiff about the defective condition of his 2009 Chevrolet HHR, and New GM did not warn Plaintiff about the defective condition of his 2009 Chevrolet HHR until April 2014, several weeks after the March 27, 2014 accident that caused his injury. Both Old GM and New GM: (1) knew or had reason to know that Plaintiff's 2009 Chevrolet HHR was likely to be dangerous for its intended uses; (2) had no reason to believe that Plaintiff would realize the dangerous condition; and (3) failed to exercise reasonable care to inform Plaintiff of the 2009 Chevrolet HHR's dangerous condition or facts that made his HHR likely to be dangerous.

Design Defect. Plaintiff alleges that his ABS and power steering failed to function during his March 27, 2014 accident because his 2009 Chevrolet HHR was equipped with a defective ignition switch that did not meet Old GM's manufacturing specifications for torque performance, and that was mounted low on the steering column close to the driver's knee. The ignition switch could move from the 'run' to the 'accessory' position during ordinary operation of the vehicle, disabling the vehicle's power, power steering, power brakes, ABS, and airbag systems. Plaintiff alleges that Old GM had knowledge of the ignition switch defect when Plaintiff's vehicle was manufactured, but it installed the switch into the 2009 Chevrolet HHR anyway. Plaintiff alleges and will establish at trial that at the time the 2009 Chevrolet HHR left Old GM's hands, the vehicle was unreasonably dangerous for its ordinary use or some other foreseeable purpose.

Failure to Exercise Due Care. Old and New GM actively concealed the ignition switch defect, as described herein, until *after* Plaintiff's March 27, 2014 accident, in the face of knowledge that (a) the ignition switch in Plaintiff's 2009 Chevrolet HHR was defectively designed and

defectively positioned in the vehicle prior to sale; (b) movement of the switch from the 'run' to 'accessory' position during ordinary use could cause a loss of vehicle power, loss of power brakes and power steering, loss of ABS, and loss of airbags that jeopardized the safety of Plaintiff and other foreseeable users; and (c) other drivers of defective vehicles, like Plaintiff, would be subject to peril from the ignition switch defect. In this fashion, Old GM and New GM failed to do what reasonable and prudent actors would ordinarily have done under the circumstances and failed to use the degree of care that an ordinarily prudent person would exercise under the same or similar circumstances.

Negligence *Per Se*. Under the National Traffic and Motor Vehicle Safety Act ("Safety Act"), New GM was required to notify the National Highway Traffic Safety Administration ("NHTSA") and vehicle owners and purchasers if it determined that the vehicle contained a defect related to motor vehicle safety. 49 U.S.C. § 30118(c)(1). New GM was required to provide this notice to NHTSA not more than five working days after determining that the ignition switch defect, described herein, was safety related. 49 C.F.R. § 573.6(b). New GM was required to notify the owners of defective vehicles either "within a reasonable time of" or "no later than 60 days from" the filing of the NHTSA notification, depending on the version of 49 C.F.R. § 577.7(a) that was in effect at the time.[4] The Safety Act and its implementing regulations were enacted for public safety reasons and designed to protect people like Plaintiff from vehicle defects that may cause death or injury.

Pursuant to the July 26, 2009 Amended and Restated Master Sale Agreement, New GM expressly agreed to comply with these Safety Act reporting requirements for Old GM vehicles,

---

[4] 49 C.F.R. § 577.7(a) was updated, effective October 11, 2013, to replace "within a reasonable time" to "no later than 60 days" from the filing of the NHTSA notification.

including Plaintiff's 2009 Chevrolet HHR. New GM violated the Safety Act by failing to timely report the ignition switch defect when it learned, after July 10, 2009, that the '190 ignition switches did not meet Old GM's manufacturing specifications for torque performance and that the ignition switches continued to present unreasonable safety risks due to their low position on the steering column in Delta vehicles like Plaintiff's. New GM continued to violate the Safety Act by failing to report the ignition switch defect that existed in the 2009 Chevrolet HHR even though New GM accumulated additional knowledge regarding the defective ignition switch throughout 2012 until 2014, when it initiated a recall.

Damages. Under each theory of negligence set forth above, Plaintiff will prove at trial that his patellar tendon injury was proximately caused by the ignition switch defect. Plaintiff's 2009 Chevrolet HHR was manufactured with the ignition switch defect, and it was foreseeable that the ignition switch could move from the 'run' position to the 'accessory' position during ordinary vehicle use. Just prior to his accident, Plaintiff was driving across a bumpy stretch of roadway and he was using a long and heavy keychain with an ignition key with a slotted key head. New GM knew that a key with a slotted key head would produce greater rotational force on the ignition switch, making it more likely to rotate under rough road conditions, especially when the keychain was long and heavy like Plaintiff's. New GM knew or should have known that it was not reasonable to equip vehicles with an ignition switch that could move from 'run' to 'accessory' under ordinary driving conditions and it should have taken steps to warn its customers of the dangerous and/or defective condition. In Plaintiff's case, the movement of the ignition switch disabled his power steering and ABS, and as a result, Plaintiff was unable to avoid colliding with the vehicle ahead of him. This collision caused Plaintiff's patellar tendon injury.

Old GM and New GM consciously pursued a course of conduct knowing that it created a substantial risk of harm to others, including Plaintiff and other drivers of defective vehicles. Old GM and New GM knew or should have known long before March 28, 2014, when New GM notified NHTSA that it was recalling Plaintiff's 2009 Chevrolet HHR and cars like it, that the vehicle was equipped with a defective ignition switch that was unsafely positioned on the steering column. Old GM and New GM's conduct evinces a reckless indifference to the consequences of their acts (and failure to act), which Old and New GM were aware would probably result from their conduct and cause injury to others. Because the conduct of Old GM and/or New GM was willful and wanton or intentional, and/or created a substantial risk of harm to Plaintiff and others, comparative negligence on the part of Plaintiff should not be available as a defense. Even if Plaintiff were comparatively negligent, his ABS should have worked and his power steering should have functioned when he attempted to avoid the collision.

New GM assumed liability for Old GM's negligence that caused death, personal injury or damage to property caused by Old GM vehicles. Accordingly, New GM is liable for Old GM's negligence in designing a vehicle containing a deadly defect and failing to take any action to warn or otherwise protect the public. New GM is also liable for its own independent conduct.

2.      Strict Liability

Plaintiff contends that New GM is strictly liable under three theories of strict liability: manufacturing defect, design defect, and failure to warn. Under each of these theories, New GM expressly assumed liability for Old GM's conduct under Arizona's laws of products liability. Accordingly, New GM is liable for the acts and omissions of Old GM in designing, manufacturing, and failing to warn Plaintiff of the defective and unreasonably dangerous condition of his 2009 Chevrolet HHR.

Plaintiff claims that Old GM manufactured a defective and unreasonably dangerous product—namely, his 2009 Chevrolet HHR, equipped with a defective ignition switch that was positioned in an unreasonably dangerous location on the steering column. This unreasonably dangerous condition existed when Old GM manufactured the 2009 Chevrolet HHR, and the vehicle was unreasonably dangerous when it left Old GM's control. This unreasonably dangerous condition is the exact condition that caused Plaintiff's March 27, 2014 accident, as set forth in detail above. Old GM did not intend for the 2009 Chevrolet HHR to contain this defective condition, but as a result of the condition, the 2009 Chevrolet HHR failed to perform as an ordinary consumer, like Plaintiff, would expect.

In addition, Plaintiff claims that his 2009 Chevrolet HHR contained a design defect because its harmful characteristics—the ignition switch defect, as described herein—outweighed the benefits of the design. It was not reasonable for Old GM to place the 2009 Chevrolet HHR on the market with its knowledge that the ignition switch could move from the 'run' to 'accessory' position during ordinary use, thus causing the vehicle to lose power and related safety systems. A reasonable consumer, such as Plaintiff, would not expect a reasonably safe vehicle to perform in this manner.

Old GM failed to warn Plaintiff about the dangerous and defective condition within the 2009 Chevrolet HHR. Old GM did not advise Plaintiff that the ignition switch could inadvertently move from the 'run' position to the 'accessory position, thus disabling power and safety systems in the vehicle. This condition rendered the 2009 Chevrolet HHR unreasonably dangerous for use in a reasonably foreseeable manner.

The ignition switch defect rendered Plaintiff's 2009 Chevrolet HHR unreasonably dangerous and on March 27, 2014, caused Plaintiff to collide with the vehicle ahead of him. This

collision, in turn, caused Plaintiff's patellar tendon injury and the present and future damages related thereto. New GM is liable to Plaintiff for these damages.

**B.**     **Defendant's Statement[5]—New GM contends the following defenses are relevant to this action:[6]**

1.     On All Causes of Action

New GM denies liability under any of Plaintiff's causes of action.  To prevail, Plaintiff must prove that his HHR was defective and that the defect caused his accident and injuries, which he cannot do.  An ignition switch defect did not cause or contribute to Plaintiff's accident or injuries.  *First*, Plaintiff caused or contributed to the crash by following too closely, failing to pay attention to the roadway, and driving too fast for conditions.  *Second*, there is no evidence that the vehicle's ignition switch rotated (either by inertia or knee-to-key contact) or in any way caused or contributed to the accident.  Plaintiff's only purported "evidence" of rotation is offered by his experts, but their opinions are not based upon any scientific or reliable methodology.

Plaintiff's alleged damages result from non-accident-related health conditions, including his pre-existing heart condition and diabetes and his post-accident development of peripheral artery disease and other vascular issues.  Plaintiff failed to mitigate his alleged damages by not following the treatment that his physicians and other healthcare providers recommended.

Plaintiff is not pursuing successor liability claims against New GM.[7]  Although Plaintiff alleges that New GM expressly assumed certain Assumed Liabilities from Old GM, Plaintiff does

---

5     New GM fully stands by the Deferred Prosecution Agreement ("DPA") it entered into with the United States Attorney for the Southern District of New York, dated September 16, 2015, and the Statement of Facts associated with the DPA.  Nothing in this filing is intended to contradict the Statement of Facts or New GM's representations in the DPA.

6     New GM respectfully reserves the right to renew or revisit any of its motions the Court did not or does not grant depending on the evidence sought to be introduced at trial.

7     Plaintiff's Opp. to New GM's Motion for Summary Judgment (Docket No. 4007) at 11 n.8.

not claim that the Assumed Liabilities include (i) punitive damages, or (ii) compensatory damages for fraudulent concealment and violation of the Arizona Consumer Fraud Act.

Plaintiff's claims fail for the additional reasons set forth below.

### 2.    Negligence (Count I)

With respect to plaintiff's Assumed Liability and Independent Claims based on negligence, New GM asserts the same causation and damages deficiencies detailed above. *See* Section IV.B.1. Additionally, Plaintiff's conduct leading up to the accident (following too closely, failing to pay attention to the roadway, and driving too fast for conditions) was negligent, which negligence caused or contributed his accident and alleged injuries. *Id.* Therefore, if the jury were to find New GM liable, Plaintiff's damages, if any, should be reduced by his percentage of fault. *Id.* Moreover, Plaintiff will not be able to prove that Old GM was negligent in the design or manufacture of his 2009 HHR or that Old GM or New GM was negligent in failing to warn Plaintiff because the ignition switch in his 2009 HHR was not unreasonably dangerous.  The ignition switch in Plaintiff's HHR was not the "423 ignition switch" used in certain MY 2007 and earlier Cobalt and Ion vehicles; it was the "190 switch," which has a longer detent spring and plunger and substantially higher torque resistance.  The ignition switch in Plaintiff's vehicle is not susceptible to inadvertent rotation, either through inertial or "knee-key" interaction.[8]  Finally, with respect to

---

[8]    It appears that Plaintiff is disclaiming any negligence claim based on a failure to recall.  *See* Plaintiff's Opp. to New GM's Motion for Summary Judgment (Docket No. 4007) at 16 ("As in *Scheuer*, Plaintiff's negligence claim does not depend on a specific 'duty to recall.'"); *id.* at 15 ("As this Court has recognized, New GM's duty to consumers need not fit neatly into a duty to warn or duty to recall.").  To the extent Plaintiff maintains such a claim, it fails for various reasons.  First,  the ignition switch in his 2009 HHR was not unreasonably dangerous and did not present a safety issue. Second, Arizona does not recognize a duty to recall that is enforceable by a private party or without a governmental directive.  *Gomez v. Daimlerchrysler Motors Corp.*, 2007 WL 9600485, at *4 (Ariz. Ct. App. Feb. 15, 2007).  Finally, any Assumed Liability claim for failure to recall fails for the same reasons as Plaintiff's negligence *per se* Assumed Liability claim based on the conduct of Old GM.

Plaintiff's negligence *per se* claim *based on Old GM conduct*, paragraph 21 of the December 2015 Judgment provides:  "A duty to recall or retrofit is not an Assumed Liability, and New GM is not responsible for any failures of Old GM to do so."  Because it is based on a failure to recall within a specified time period (Plaintiff's Opp. to New GM's Motion for Summary Judgment (Docket No. 4007) at 17), Plaintiff's negligence *per se* claim fails as a matter of law to the extent it is based on Old GM conduct.

Plaintiff's Independent Negligence Claims based on failure to warn and negligence *per se* against New GM in Count I also fail as a matter of law for the additional reasons set forth below.

### a.  Failure to Warn

Plaintiff's Independent Claim based on a failure to warn fails because Arizona courts have not imposed a duty to warn obligation on an asset purchaser regarding alleged defects in the seller's products.  *Gariby ex. rel. Fleming v. Evenflo Co.*, 2012 WL 506742, at *3 n.4 (Ariz. Ct. App. Feb. 16, 2012).  Moreover, Arizona courts limit product liability claims to those with a "causal connection to the production or distribution of the product."  *Winsor v. Glasswerks PHX, L.L.C.*, 63 P.3d 1040, 1049 (Ariz. Ct. App. 2003).  New GM is not the manufacturer or seller of Plaintiff's vehicle and therefore has no connection to its production or distribution.  The Court declined to adopt New GM's arguments in this regard in its summary judgment opinion, but stated that it was a "close call."  (Docket No. 4110 at 20.)

### b.  Negligence *per se*

Plaintiff's Independent Claim based on negligence *per se* fails as well.  *First*, to the extent Plaintiff relies on New GM's admissions regarding violations of the Safety Act, those admissions are irrelevant because they concerned the earlier "423 ignition switch" used in MY 2007 and earlier Cobalt and Ion vehicles, not the "190 switch" in Plaintiff's vehicle, which has a longer detent spring and plunger and substantially higher torque resistance.  *Second*, Plaintiff cannot prove that

New GM violated the Safety Act with respect to Plaintiff's vehicle.  The Safety Act imposes recall obligations only on "manufacturers," 49 U.S.C. § 3011(c)(1), and New GM was not the manufacturer of Plaintiff's vehicle.  *Third*, Plaintiff's negligence *per se* claim is based on New GM's violation of the Safety Act.  It is undisputed that New GM would have no duty to comply with the Safety Act for the subject vehicle but for the recall covenant in Section 6.15(a) of the Sale Agreement.  Thus, Plaintiff's negligence *per se* claim would not exist but for the recall covenant in the Sale Agreement.  Permitting Plaintiff to recover on a negligence *per se* claim would therefore result in the recall covenant of the Sale Agreement being "construed to confer upon or give to any Person, other than the Parties, [Old GM and New GM]," and would violate the third-party clause in Section 9.11 of the Sale Agreement.  *Fourth*, negligence *per se* is precluded under Arizona case law, which provides that liability for products is limited to the manufacturer and distributors of the product.  The Court denied New GM's motion for summary judgment on negligence *per se*. (Docket No. 4110, at 26).

### 3.   Strict Liability (Count II)

As to Plaintiff's Assumed Liability claim based on a strict liability theory, New GM asserts the same causation and damages deficiencies detailed above.  *See* Section IV.B.1.  Plaintiff's conduct leading up to the accident (following too closely, failing to pay attention to the roadway, and driving too fast for conditions) caused or contributed to his accident and alleged injuries. Therefore, if the jury were to find New GM liable, Plaintiff's damages, if any, should be reduced by his percentage of fault.  *Id*.  Moreover, Plaintiff will not be able to prove that Old GM or New GM is liable because the ignition switch in his 2009 HHR was not unreasonably dangerous.  The ignition switch in Plaintiff's HHR was not the "423 ignition switch" used in certain MY 2007 and earlier Cobalt and Ion vehicles; it was the "190 switch," which has a longer detent spring and

plunger and substantially higher torque resistance.  The ignition switch in Plaintiff's vehicle is not susceptible to inadvertent rotation, either through inertial or "knee-key" interaction.

### 4.     Fraudulent Concealment (Count III)

The Court granted New GM's Motion for Summary Judgment on Fraudulent Concealment. (Docket No. 4110 at n.4.)

### 5.     Violation of Arizona Consumer Fraud Act ("CFA") (Count IV)

The Court granted New GM's Motion for Summary Judgement on the CFA claim. (Docket No. 4110 at 19.)

### 6.     Punitive Damages

Punitive damages are only recoverable on Independent Claims.  Because Plaintiff has no viable Independent Claim, he cannot recover punitive damages.  The Court declined to adopt New GM's arguments in this regard in its summary judgment opinion.  (Docket No. 4110, at 28.)

## V.     BIFURCATION STIPULATION

The parties agree that the issue of the amount of punitive damages, if any, should be bifurcated from the issues of the amount of and liability for compensatory damages and liability for punitive damages.  For the purposes of this case, the parties will only seek to introduce Feinberg Program evidence during a second phase, if necessary, to determine the amount of punitive damages, if any.  Plaintiff will only seek to introduce evidence of New GM's net worth during that second phase, if necessary.  Accordingly, the Court's entry of this Joint Pretrial Order provides for a separate second phase of trial on the issue of the amount of punitive damages, if any, pursuant to Federal Rule of Civil Procedure 42(b).

At this time, the only specific evidence the parties anticipate being limited to the second phase of the trial (if necessary) is Feinberg Program evidence and evidence regarding New GM's net worth or evidence concerning New GM's ability to pay or the effect of any punitive damages

award on New GM's finances.  Any party who later identifies additional evidence that it believes should be reserved only for the second phase of trial (if any) shall use good faith efforts to apprise the other party of its position regarding the sequencing of the evidence and either reach agreement or seek Court guidance or resolution if necessary.

The parties also agree that they will meet and confer regarding whether a limiting instruction is necessary, as well as the proposed wording of any proposed limiting instruction, which may be provided by the Court if there is a second phase.

## VI.     NUMBER OF TRIAL DAYS NEEDED AND JURY

Both parties have requested a trial by jury.  Plaintiff requires 30 hours to present his case at trial.  This does not include time required for a second phase, if necessary, to determine the amount of punitive damages, if any.  New GM requires 30 hours to present its case at trial.  This does not include time required for a second phase, if necessary, to determine the amount of punitive damages, if any.  Plaintiff and New GM have conferred, and if the trial is conducted from 9:00 a.m. to 2:30 p.m., with one short break from approximately 11:30 a.m. to noon, as the Court's Individual Rules and Practices for Trials provide, plaintiff and New GM estimate requiring 60 hours for trial, which is approximately 12 court days.

## VII.    JOINT STATEMENT SUMMARIZING THE NATURE OF THE CASE FOR JURY SELECTION

This is a civil case brought by Plaintiff Dennis Ward against Defendant General Motors LLC (sometimes called "GM LLC" or "New GM"), seeking damages for injuries he allegedly suffered in a 2014 car accident while driving a General Motors-brand car.  Plaintiff alleges that the accident occurred because the braking and power steering functions of the car failed and that the failure was the result of defects with and related to the ignition switch of the car, of which GM LLC was aware, and about which GM LLC did not adequately warn.  Plaintiff brings two claims

against GM LLC, each based on Arizona law because the car accident took place in Arizona. The first claim is for negligence. The second claim is for strict liability. GM LLC denies Plaintiff's allegations.

GM LLC asserts that Plaintiff was distracted and was not paying attention while driving, and that his inattention caused him to rear-end the vehicle in front of him that had stopped due to heavy traffic. GM LLC asserts that Mr. Ward's ignition switch did not move out of the "run" position during the crash. GM LLC also claims that the steering and anti-lock brake systems in Plaintiff's vehicle performed as designed during the crash. Therefore, GM LLC denies any liability for Mr. Ward's alleged damages. Plaintiff denies GM LLC's allegations.

## VIII.   LIST OF PEOPLE, PLACES, AND INSTITUTIONS

The following is a list of people, places, and institutions likely to be mentioned during the trial.

### A.   Plaintiff, Friends, and Family Members

1.   Dennis Ward: Plaintiff

2.   Steven Ward: Plaintiff's Son

3.   Trevor Ward: Plaintiff's Son

4.   Rodney Ward: Plaintiff's Son

5.   Sheila Ward: Plaintiff's Wife

6.   Roy Marcus "Mark" Finley, Jr.: Plaintiff's Friend

7.   Danny Rigs: Plaintiff's Friend

B.     **General Motors LLC ("New GM" or "GM LLC") and/or General Motors Corporation ("Old GM") Former and Current Employees[9]**

1.     Alan Adler: GM Spokesperson; Manager of News Relations and GM Media Online; GM Manager, Product Safety Communications

2.     Gary Altman: Former GM Chief Engineer for Chevrolet Cobalt and Saturn Ion

3.     Kathy Anderson: Technical Fellow, FPA Engineer

4.     Laura Andres: GM Design Engineer

5.     Antonio Antonucci: Senior Staff Analysis Engineer

6.     Randy Arickx: GM Executive Director, Communications & Investor Relations

7.     Robert Arndt: Senior Analyst in Warranty Accounting

8.     Mary Barra: Chief Executive Officer

9.     Allan Batey: Executive Vice President

10.    Mark Beauregard: Former GM Senior Creative Designer

11.    Carmen Benavides: Former GM Director, Product Investigations, Safety Regulations & Certifications, and Field Performance Assessment

12.    Selim Bingol: Former GM Vice President, Global Communications

13.    Valerie Boatman: GM Engineer

14.    Alicia Boler-Davis: GM Vice President, Global Quality and US Customer Experience; Co-Vice President for Product Safety

15.    Jeffery Boyer: Vice President, Global Vehicle Safety

16.    Andrew Brenz: GM Engineer

17.    Doug Brown:  Former GM Staff Attorney

18.    Eric Buddrius: GM Engineer, Product Investigations

---

[9]    The listed titles of the General Motors LLC ("New GM" or "GM LLC") and/or General Motors Corporation ("Old GM") Former and Current Employees reflect positions held as of the date of their deposition testimony or their title during the time period relevant to the case.

19.    Lawrence Buonomo: Former GM Attorney

20.    John Calabrese: Former GM Executive Director, Interior Engineering; Co-Vice President for Product Safety

21.    Dave Caples: GM Engineering Intern

22.    John Capp:  Engineer, Passive Safety Systems

23.    David Carey: GM Electrical Engineer

24.    John Carriere: GM Engineering Group Manager

25.    Tony Cervone: GM Senior Vice President, Global Communications

26.    William Chase: Former GM Engineer

27.    James Churchwell: GM Engineer

28.    Terrance Connolly: Chasis and Safety Engineer

29.    Dwayne Davidson: Former Senior Manager, Product Investigations, TREAD Act Reporting

30.    Dan Davis: Red X Engineer

31.    Dave DeFrain: Director of Infotainment, Displays & Controls Engineering

32.    Ray DeGiorgio: Former Design Release Engineer

33.    John Dolan: GM Field Performance Assessment Engineer

34.    Lucy Clark Dougherty: GMNA Vice President and General Counsel; GM Executive Director, Legal Government Relations & Global Public Policy

35.    Brian Everest: GM Senior Manager, SIR & Crash Reconstruction, Field Performance Assessment

36.    James Federico: Former GM Executive Director, Global Vehicle Performance, Proving Grounds, & Test Labs

37.    Joseph Fedullo: Director of Vehicle Systems Engineering

38.    Dan Fernandez: Ion Brand Quality Manager

39.    Maureen Foley-Gardner: Former GM Director, Global Field Performance Evaluation

40.    Fred Fromm:  GMNA General Counsel from 2009-2011

41.   Dale Furney: GM Engineering Group Manager, Safety/Crashworthiness

42.   Lee R. Godown:  GM VP of Global Government Relations

43.   Thomas Gottschalk: Former GM Attorney

44.   Michael Gruskin: GM Attorney/Former Litigation Manager

45.   Victor Hakim: GM Engineer

46.   Greg Hall: GM Field Action Execution Manager

47.   Ebram Handy: GM Subsystem Leadership Team, SSLT, Steering

48.   Jean Hart: Brand Quality Manager

49.   John Hendler: GM Engineer

50.   Amber Hendricks: Customer Satisfaction Improvement Leader

51.   Gerald Johnson: Vice President, North American Engineering

52.   Mark Johnson: GM Senior Manager, Internal Product Investigations

53.   Peter Judis: GM Steering Column BFO

54.   James "Jim" Cain: Senior Manager of Executive Communications and Sales Communications

55.   Courtland Kelley: GM Engineer

56.   William Kemp: Former GM Attorney

57.   Gay Kent: Former GM Director, Product Investigations

58.   Elizabeth Kiihr: Product Investigations Engineer

59.   Steve Kirkman: GM Engineer

60.   Ed Koerner: Former GM Vice President

61.   Joseph Manson: GM Engineer

62.   Alberto Manzor: Chief Engineer, North America Compact Vehicles

63.   Greg Martin: GM Executive Director, Communications Strategy and News Operations

64.   Onassis Matthews: CVEP Driver

65.     Nancy McLean: Former GM Director, Customer Care and Aftersales Engineering and Service Operations

66.     Bill Merill: Red X Engineer

67.     Anthony Melocchi: GM Engineer

68.     Michelle Michelini: GM Senior Manager, Global Field Data Analysis

69.     Michael Millikin: Former GM Executive VP & General Counsel

70.     Keith Mikkelson: GM Engineer

71.     Vipul Modi: BOM Family Owner, SDM and ESS

72.     John Murawa: GM Lead Engineer, Product Investigations

73.     Deborah Nowak-Vanderhoef: Former GM Attorney, Environmental and Vehicle Regulation Practice Area

74.     Steven Oakley: GM Engineer

75.     Jaclyn Palmer: Former GM Attorney, Product Liability Litigation

76.     Jack Pantaleo: Chevrolet Camaro Brand Quality Manager

77.     Nabeel Peracha: GM Attorney

78.     Doug Parks: Vice President, Global Product Programs

79.     Ronald Porter: Former GM Attorney

80.     Jim Queen: Former GM Engineer

81.     Lori Queen: Former GM Vehicle Line Executive

82.     Naveen Ramachandrapa Nagapoloa: GM Safety Engineer

83.     Mark Reuss: GM Executive Director, North American Vehicle Systems and Architecture

84.     Terrence Rhadigan: GM Director, North American Product Communications

85.     Michael Robinson:  Former GM VP for Regulatory Affairs

86.     Ray Romeo: GM Engineer

87.     Matt Schroeder: GM Executive Director, Global Functional Leader

88. Jeff Setting:  Director – Quality Global FOM & GMNA Field Performance Evaluation

89. Jennifer Sevigny: Former GM engineer

90. James Sewell: GM Engineer

91. Keith Schultz:  Former Manager of Internal Investigations in GM's Product Investigations group

92. Robert Shrosbree: Executive Director – Legal, Corporate & Securities

93. Kristen Siemen: Executive Director Electrical Systems

94. Neil Skaar: GM Field Performance Evaluation Populations, Documentation, and Launch Coordination

95. Chris Skaggs: Former GM Engineer

96. John Sprague: GM Airbag Engineer, Field Performance Assessment Division; GM Senior Staff Engineer, Engineering Group Manager

97. Lisa Stacey: GM Mechanical Engineer

98. Alan Storck: GM Engineer

99. Brian Stouffer: Former GM Engineer, Lead Product Investigator

100. Blendi Sullaj: Former Contract Engineer

101. Joseph Taylor: GM Engineer

102. Brian Thompson: Former GM Managing Engineer, Switches and Controls

103. David Trush: GM Lead Design Engineer

104. Keith Tryson: BOM Family Owner for Column Electrical Assembly

105. Karin Turski: Product Investigation Engineer

106. Thomas Van Wirt: Former GM Engineer

107. Doug Wachtel: Former GM Senior Manager, Internal Investigations

108. Rick Wagoner: Former Chief Executive Officer of General Motors Corp.

109. Lisa Weber: GM Engineering Group Manager, Passive Safety Electronics

21

110.    Michael Wendzinski: GM Engineering Group Manager, Safety and Crashworthiness Integration

111.    Terry Woychowski: Former GM Engineer

112.    Jeff Wrona: Test Validation Engineer

113.    Craig Zinser: Director of Displays, Controls, and Audio Systems

114.    James Zito: Electrical Engineer

**C.    Other Persons and Entities**

1.      Michael Porterfield: other driver in accident

2.      Elaine Vicente: other driver in accident

3.      Tucson Fire Department

   a.    Michael Bonomo: first responder

   b.    Gary Bradshaw: first responder

   c.    Robert Pope: first responder

   d.    Scott Jefferson: first responder

4.      Frontier Towing

   a.    David Fulton: tow truck driver

5.      Southwest Ambulance

   a.    Fernando Gonzales: EMT

   b.    Darrell Stevens: EMT

6.      Tucson Police Department

   a.    Seth Hoyte: responding police officer

7.      City of Tucson

   a.    Daryl Cole: Director of the Department of Transportation

   b.    Michael Graham: Public Information Officer

8.      Tucson Medical Center

   a.    Philip Olona: physician's assistant

      b.      Scott Slagis:  surgeon

      c.      Venessa Saldana: nurse

9.      Pima Heart

      a.      John Pacanowski: vascular care provider

10.      Walker Family Medicine

      a.      Dawn Walker: primary care provider

      b.      Julie Hilton: primary care provider

      c.      Mick Drage: primary care provider

11.      Northern Cochise Hospital

      a.      Michael Sulton: attending physician

      b.      Hisham Hamam: attending physician

12.      Traveler's Insurance

      a.      Adam Blank: insurance agent

13.      D&G Paint & Body, Inc.

      a.      Denise Runyan: owner

14.      ESI

      a.      David Rodgers: test subject

      b.      John Little: test subject

      c.      Terrence Kolesar: test subject

      d.      Lloyd Mason: test subject

15.      Delphi Automotive PLC ("Delphi")

      a.      Arturo Alcala: Delphi Engineer

      b.      John Coniff: Delphi Engineer

      c.      Glen DeVos: Delphi Engineer

      d.      Mary Fitch: Delphi Engineer

      e.      Gary Greib:  Manager, Product Investigations and Safety Affairs

      f.      George J. Lin: Delphi Engineer

      g.      Erik Mattson: Product Engineer (Former)

      h.      Eduardo P. Rodriguez: Delphi Engineer

      i.      Thomas Svoboda: Delphi Engineer

16.      Jeff Eller: Crisis Manager

17.      Kenneth Feinberg

18.      Mark Hood

19.      Subbaiah V. Malladi: Principal Engineer, Exponent

20.      Craig St. Pierre: Ortech Supplier Engineer

21.      Anton Valukas: attorney, Jenner & Block, LLP

22.      GM Ignition Compensation Claims Resolution Facility

23.      Jenner & Block LLP

24.      National Highway Traffic Safety Administration

25.      Virginia Tech Transportation Institute

**D.    Other Places**

1.      Tucson, Arizona

2.      Willcox, Arizona

3.      Detroit, Michigan

4.      Davison Junkyard, Davison, Michigan

5.      Milford Proving Grounds, Milford, Michigan

**E.    Experts**

1.      Plaintiff

      a.      David E. Lent, M.D.—orthopedic surgeon

      b.      Paul Lewis—biomechanics

      c.      Steve Loudon—engineering

      d.      Matthew Pitman—accident reconstruction

      e.      Glen Stevick, Ph.D., P.E.—ignition switch

      f.      Khyber Zaffarkhan, DO, FAAPMR—rehabilitation

2.    New GM

      a.      David Edelstein, M.D.—orthopedic surgeon

      b.      Gregory A. Miller—restraint systems

      c.      Roger Nightingale, Ph.D.—biomechanics

      d.      David Rollins, M.D.—vascular disease

      e.      James Sprague—ignition switch

      f.      Michael Stevenson—ignition switch

      g.      Donald F. Tandy. Jr.—accident reconstruction

## IX.    MAGISTRATE

The parties have not consented to a trial by a magistrate judge.

## X.    STIPULATED OR AGREED STATEMENTS OF FACT OR LAW

Pursuant to MDL Order No. 120, Regarding Pretrial Deadlines for Bellwether Trial No. 7, the "parties are encouraged to enter into stipulations of law and fact, if any, by Wednesday, June 28, 2017." (Docket No. 3651 at 4.) In addition, New GM refers the Court to, and incorporates by reference here, New GM's Local Rule 56.1 Statement of Undisputed Material Facts and Plaintiff's Response (Docket Nos. 3870, 4003), in which the plaintiff responded to numerous statements of fact as "Undisputed." Plaintiff also refers the Court to, and incorporates by reference here, Plaintiff's Local Rule 56.1 Statement of Undisputed Material Facts and New GM's Response (Docket Nos. 3886, 4015), in which New GM responded to numerous statements of fact as "Undisputed."

XI.     **A LIST OF ALL TRIAL WITNESSES**

A.     **Plaintiff**

1.     Will Call Witnesses (Live)

a.     **Dennis Ward (Plaintiff):** Will testify about the purchase and use of his 2009 Chevrolet HHR, the subject crash, his injuries, damages, and medical treatment resulting from the subject crash, including the cost of treatment, the impact of the subject crash on Plaintiff and his family, and communications he received from New GM regarding the ignition switch defect.

b.     **Trevor Ward (Plaintiff's Son):** Will testify about his knowledge of the subject crash, his observations of Plaintiff's injuries, and the impact of Plaintiff's injuries on his daily life.

c.     **Glen Stevick (Expert):** Will testify regarding the defective design of the ignition switch, Old GM's and New GM's notice of the defect  (including knowledge gained through other crashes) and its investigation thereof, the failure to properly perform risk assessment such as Failure Modes and Effects Analysis (FMEA) and other organizational failures that caused the failure to identify the root cause of the problem, and the impact of the ignition switch defect on vehicle safety systems.

d.     **Steve Loudon (Expert):** Will testify about the defective nature of the ignition switch and the effect it has on vehicle safety systems; his opinions and conclusions as to the soundness of the switch's development and Old GM's and New GM's handling of the information it received over the years, including knowledge gained from other crashes.

e.     **Matthew Pitman (Expert):** Will testify about the accident reconstruction as well as his analysis of the crash scene and vehicle damage.

f.     **David E. Lent, M.D. (Expert):** Will testify about his medical examination of Plaintiff and his evaluation of Plaintiff's patellar tendon injury and the lasting physical limitations this injury has caused.

2.     May Call Witnesses (Live)

a.     **Steven Ward (Plaintiff's Son):** Will testify about his knowledge of the subject crash, his observations of Plaintiff's injuries, and the impact of Plaintiff's injuries on his daily life.

b.      **Roy Marcus "Mark" Finley, Jr. (Plaintiff's Friend):** Will testify about his knowledge of the subject crash, his observations of Plaintiff's injuries, and the impact of Plaintiff's injuries on his daily life.

c.      ~~**Michael Graham (City of Tucson Public Information Officer):** Will testify to the condition of the roadway where the subject accident occurred as of the date of the accident.~~

d.      ~~**Daryl W. Cole (Director of the Tucson Department of Transportation):** Will testify to the condition of the roadway where the subject accident occurred as of the date of the accident.~~

e.      **Khyber Zaffarkhan, DO, FAAPMR (Expert):** Will testify about his analysis of Plaintiff's physical therapy program, Plaintiff's participation in physical therapy, and the likelihood that therapy could have further improved Plaintiff's range of motion and/or knee and leg strength.

f.      **Paul Lewis (Expert):** Will offer testimony to rebut the biomechanic opinion of Roger Nightingale.

g.      **Lloyd Mason (ESI test subject):** Will testify regarding his participation in James Sprague's driving tests.

h.      **Terrence Kolesar (ESI test subject):** Will testify regarding his participation in James Sprague's driving tests.

i.      **David Rodger (ESI test subject):** Will testify regarding his participation in James Sprague's driving tests.

j.      **John Little (ESI test subject):** Will testify regarding his participation in James Sprague's driving tests.

**B.      Defendant New GM[10]**

1.      Will Call Witnesses (Live)

a.      **Dennis Ward (Plaintiff):** Will be subject to cross examination regarding his claims, injuries and damages in this case.

b.      **Michael Stevenson (Expert):** Will provide opinions related to functionality of the ignition switch and the conditions and

---

[10]   No witnesses on New GM's or Plaintiff's "will call" or "may call" lists will require an interpreter.

circumstances of inadvertent key rotation, including with respect to the subject incident.

c.  **Donald F. Tandy Jr. (Expert):** Will provide opinions regarding the reconstruction of plaintiff's accident, as well as vehicle handling when there is a loss of power steering or power brakes.

2.  May Call Witnesses (Live)

a.  **Applicable Document Custodians of Third Parties:** GM LLC reserves the right to call custodians of records of third parties who have produced documents to testify to establish authenticity and hearsay exceptions to the extent plaintiff does not stipulate to such records.

b.  **Joe Fedullo (Director, Vehicle Systems Engineering) (Expert):** If called, will testify about the ignition system testing performed by New GM regarding the circumstances that may lead to inadvertent key rotation in certain vehicles.

c.  **Jeff Boyer (Vice President, Global Safety):** If called, will testify about New GM's safety organizations, the changes to those organizations since 2014, and the steps taken by New GM to address the harm caused by defective Delta ignition switches.

d.  **Gregory A. Miller (Expert):** If called, will provide opinions on the restraint system in plaintiff's vehicle.

e.  **David Edelstein, M.D. (Expert):** If called, will provide opinions regarding plaintiff's alleged injury.

f.  **Roger Nightingale, Ph.D. (Expert):** If called, will provide opinions regarding the biomechanics of plaintiff's accident.

g.  **David Rollins, M.D. (Expert):** If called, will provide opinions regarding plaintiff's historic and continuing vascular issues.

h.  **James Sprague (Expert):** If called, will provide opinions related to the circumstances and conditions relating to knee-key interaction with respect to the subject incident.

**XII.   DEPOSITION TESTIMONY TO BE OFFERED IN EACH PARTY'S CASE-IN-CHIEF AND ANY COUNTER-DESIGNATIONS AND OBJECTIONS**

As reflected in Section 2(j) of Order 120 (Docket No. 3651), the parties exchanged deposition designations on June 2, 2017.  The parties also exchanged deposition designation objections and counter-designations on June 14, 2017.

**XIII.   EXHIBITS TO BE OFFERED**

The parties exchanged trial exhibit lists on May 26, 2017.  The parties will meet and confer to resolve objections to these exhibit lists, and the trial exhibits will be submitted to the Court by July 7, 2017.  (Docket No. 4079-1, at 3.)  As in prior bellwether trials in this MDL, the parties agreed that each party could freely add up to 20 exhibits to each exhibit list by June 19, 2017.

**XIV.   STATEMENT OF THE DAMAGES CLAIMED AND RELIEF SOUGHT**

Plaintiff seeks damages in an amount to be determined at trial that will reasonably and fairly compensate him for the injuries he sustained as a result of the negligence and strict liability of Old GM and New GM. Plaintiff also seeks exemplary or punitive damages with respect to New GM's wrongful conduct. In addition to actual and punitive damages, Plaintiff seeks the costs of litigation, including reasonable attorneys' fees, and pre- and post-judgment interest. Finally, Plaintiff requests that the Court award Plaintiff such other further and different relief as the case may require or as determined to be just, equitable and proper by the Court.

New GM denies that plaintiff is entitled to any damages.

29

**XV.   STATEMENT OF WHETHER THE PARTIES CONSENT TO LESS THAN A UNANIMOUS VERDICT**

Plaintiff consents to a less than unanimous verdict.  New GM does not consent to less than a unanimous verdict.

SO ORDERED (subject to any rulings the Court previously made or hereafter makes).

Date:   July 6, 2017
        New York, New York

_____
JESSE M. FURMAN
United States District Judge